FILED
COURT OF APPEALS
DIVISION II

2014 APR 24   AM 10: 47

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CLARK COUNTY FIRE DISTRICT NO. 5 and AMERICAN ALTERNATIVE INSURANCE CORPORATION, | No. 42864-4-II Consolidated with No. 43970-1-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| BULLIVANT HOUSER BAILEY P.C. and RICHARD G. MATSON, | |
| Respondent. | |

MAXA, J. – Clark County Fire District No. 5 (Fire District) and its insurer American Alternative Insurance Corporation (AAIC) appeal the trial court's summary judgment dismissals of their legal negligence claims against the law firm Bullivant Houser Bailey PC and attorney Richard Matson (collectively, Matson). AAIC retained Matson to defend the Fire District and its employee, Martin James, in a gender discrimination and sexual harassment lawsuit. The trial of that lawsuit resulted in a jury verdict in excess of $3.2 million, which was increased to almost $4 million following the award of attorney fees. The Fire District and AAIC subsequently sued Matson, alleging that he was negligent in (1) failing to properly evaluate the case for settlement purposes,

(2) mishandling various pre-trial matters, and (3) failing to object to improper statements in closing argument and failing to preserve for appeal the ability to challenge these statements. The trial court dismissed AAIC's claims based on its ruling that AAIC had no standing to sue because it was not Matson's client, and later dismissed the Fire District's negligence claims based on its ruling that Matson could not be liable for his judgment decisions.

Initially, we hold that under *Stewart Title Guaranty Co. v. Sterling Savings Bank*, 178 Wn.2d 561, 569-70, 311 P.3d 1 (2013), the trial court correctly ruled that AAIC did not have standing to sue Matson because his representation of the Fire District was not intended for AAIC's benefit. Therefore, we affirm the trial court's dismissal of AAIC's claims. With regard to the Fire District's legal negligence claims, all of the conduct at issue involved the exercise of Matson's professional judgment. We apply the "attorney judgment rule" to hold that (1) the Fire District could avoid summary judgment only if it came forward with sufficient evidence to show that Matson's judgment decisions were not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington or that decisions themselves resulted from negligent conduct; and (2) the opinions of the Fire District's experts created questions of fact regarding most of its allegations. Accordingly, we affirm the trial court's grant of summary judgment dismissal of AAIC's claims, but we reverse the trial court's grant of summary judgment in favor of Matson on all the Fire District's claims except for the failure to object to the improper closing argument and the failure to file an appropriate motion in limine regarding the subject of the improper argument.

FACTS

*Underlying Lawsuit*

In February 2005, Sue Collins, Valerie Larwick, Kristy Mason, and Helen Hayden sued their supervisor (James) and employer (Fire District) for gender discrimination and sexual harassment in violation of the Washington Law Against Discrimination, chapter 49.60 RCW, and for related claims. *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 62-63, 231 P.3d 1211 (2010).

James admitted to making sexually inappropriate and discriminatory comments while supervising employees, but he also testified that the plaintiffs had not told him that his remarks were inappropriate. *Collins*, 155 Wn. App. at 67. From the Fire District's perspective, James's inappropriate comments and actions were part of ongoing banter between James and Collins, which Collins had initiated and encouraged. The Fire District disputed that James acted inappropriately with regard to the other plaintiffs and contended that they joined the lawsuit at Collins's urging.

*Matson Case Evaluation and Mediation*

In April 2005, AAIC retained Matson to defend its insureds (Fire District and James) in the Collins litigation. Apparently, there were lengthy delays in the discovery process. The plaintiffs did not depose James until February 8, 2007.

On February 26, 2007, Matson provided to AAIC a written evaluation of the plaintiffs' cases in preparation for a mediation. He valued each of the plaintiffs' claims based on past medical expenses, future medical expenses, back pay, front pay, prejudgment interest, general damages, and attorney fees. He also assigned a probability of prevailing for each plaintiff. Then Matson calculated a settlement value for each plaintiff based on the potential recoverable

3

damages and the probability of prevailing. Matson evaluated the combined settlement value of the plaintiffs' claims at $370,000.[1] However, he warned that his approach was conservative, and that potentially recoverable damages could be higher at trial and the settlement values of each case could be as much as 50 percent higher. Matson also advised that exposure to adverse prevailing party attorney fees was a significant issue and could drive the settlement value of the case. Finally, Matson advised that the plaintiffs also could recover an amount that represents their increased income tax exposure.

On March 2, Matson provided a detailed pre-mediation statement to the mediator. Matson explained the facts from the plaintiffs' and defendants' perspectives and set forth his analysis regarding the strengths and weaknesses of each of the plaintiffs' claims.

On the eve of mediation, plaintiffs increased their settlement demand from $6.6 million to approximately $8.5 million. Consistent with Matson's evaluation of the case, AAIC's representative had $400,000 in settlement authority at the mediation. According to AAIC's representative, the mediator indicated that from her perspective, $1.8 million possibly would be a reasonable demand, but not $8 million, and that the average settlement value was approximately $85,000 per plaintiff. The mediator spoke to the plaintiffs but reported back that their demands remained firm. After a full day of mediation, AAIC decided not make a settlement offer in any amount. The AAIC representative stated at mediation that "if the plaintiffs want these kind of numbers a jury is going to have to give it to them." Clerk's Papers (CP) at 546.

---

[1] Matson valued Collins's claims at $157,000, her prospect of prevailing at 35 percent, and the settlement value of her claims at $55,000. Matson valued Mason's claims at $130,000, her prospect of prevailing at 60 percent, and her settlement value at $78,000. Matson valued Hayden's claims at $249,000, her prospect of prevailing at 65 percent, and her settlement value at $162,000. Matson valued Larwick's claims at $205,000, her prospect of recovery between 35-60 percent, and her settlement value at $75,000.

Matson did not file any dispositive motions or a motion to bifurcate the cases. Matson also did not make an offer of judgment.

*Trial and Appeal*

The case proceeded to trial. The jury returned a verdict in favor of all four plaintiffs, awarding them substantial judgments that totaled more than $3.2 million. *Collins*, 155 Wn. App. at 73-74. The trial court also awarded the plaintiffs more than $750,000 in attorney fees and costs. *Collins*, 155 Wn. App. at 77-80.

The Fire District moved for a new trial, arguing that during closing arguments plaintiffs' counsel deliberately interjected evidence of liability insurance and improperly encouraged the jury to award punitive damages to send a message to the Fire District. *Collins*, 155 Wn. App. at 74, 93-94. The trial court denied the motion, ruling that "[t]aken together without objection, [the comment] is not so prejudicial to warrant the granting of a new trial." *Collins*, 155 Wn. App. at 95 (second alteration in original).

On appeal, we affirmed the trial court's denial of the Fire District's motion for a new trial in a published decision. *Collins*, 155 Wn. App. at 105. With regard to the closing argument issue, we held that "[a]lthough such remarks were improper, we agree with the trial court that they were not so prejudicial that a timely instruction could not have cured any prejudicial effect."[2] *Collins*, 155 Wn. App. at 95. This court also affirmed the trial court's attorney fees

---

[2] The Fire District also sought remittitur, arguing that the jury's damages award was excessive and that justice had not been done and substantial evidence failed to support the plaintiffs' awards for economic damages. *Collins*, 155 Wn. App. at 74. The trial court granted the motion for remitter in part by reducing Larwick's damages. *Collins*, 155 Wn. App. at 75. On cross appeal, we reversed the trial court's partial grant of the Fire District's motion to remit and remanded to the trial court to reinstate the jury verdict and damages award. *Collins*, 155 Wn. App. at 87-93, 105.

award and awarded $116,650.69 in attorney fees and costs on appeal to Collins and Larwick. *Collins*, 155 Wn. App. at 105.

The supplemental judgment, for which AAIC indemnified its insureds, totaled more than $4.8 million (not including interest).

*Allegation of Legal Negligence*

AAIC and the Fire District sued Matson, alleging that he was negligent in failing to properly evaluate the case for settlement purposes, in mishandling various pre-trial matters, and in failing to object to allegedly improper closing arguments. The trial court dismissed AAIC from the lawsuit for lack of standing because AAIC was not Matson's client. The trial court certified its order under CR 54(b) to facilitate immediate appellate review, and AAIC appealed.

Thereafter, the trial court dismissed the Fire District's negligence claims against Matson on summary judgment, holding as a matter of law that Matson could not be liable for his judgment decisions. The Fire District appealed. We consolidated both appeals.

ANALYSIS

A.      STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). "We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz*, 175 Wn.2d at 271. "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). If

reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *M.A. Mortenson Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 579, 998 P.2d 305 (2000).

Under CR 56, a defendant is entitled to summary judgment if (1) the defendant shows the absence of evidence to support the plaintiff's case and (2) the plaintiff fails to come forward with evidence creating a genuine issue of fact on an element essential to the plaintiff's case. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). To avoid summary judgment in a negligence case, the plaintiff must show a genuine issue of material fact on each element of negligence – duty, breach, causation and damage. *Martini v. Post*, 178 Wn. App. 153, 164, 313 P.3d 473 (2013).

B.    AAIC'S STANDING TO SUE

The parties agree that even though AAIC retained and paid Matson, AAIC was not Matson's client. Matson's only client was the Fire District. The trial court dismissed AAIC's legal negligence claim on this basis. AAIC argues that it does have standing to sue Matson under the facts of this case. We disagree based on our Supreme Court's decision in *Stewart Title*, 178 Wn.2d at 569-70.

In *Trask v. Butler*, 123 Wn.2d 835, 842-43, 872 P.2d 1080 (1994), our Supreme Court held that the threshold question for a nonclient's ability to sue an attorney for legal negligence is whether the attorney's representation was intended to benefit the nonclient.[3] In *Stewart Title*, our Supreme Court applied this rule in the insurance defense context, holding that a title insurer

---

[3] In *Trask*, our Supreme Court adopted a six-factor test to determine whether an attorney owes a duty of care to a nonclient third party. 123 Wn.2d at 842-43. Whether the representation was intended to benefit the nonclient is the first factor and primary inquiry. *Trask*, 123 Wn.2d at 842-43.

that hired an attorney to defend its insured was not an intended beneficiary of the attorney's representation. 178 Wn.2d at 563, 569-70. The court held that the alignment of interests between the insurer and the insured during the representation and the insured's attorney's duty to keep the insurer informed of the progress of the litigation were insufficient to establish that the insurer was an intended beneficiary of the representation and, therefore, the attorney did not owe a duty of care to the insurer. *Stewart Title*, 178 Wn.2d at 567-70.

AAIC argues that *Stewart Title* does not impose a rule that applies in all insurance defense situations and that the *Trask* intended beneficiary factor must be analyzed on a case-by-case basis. AAIC contends that the facts here support a finding that AAIC was an intended beneficiary of Matson's representation. However, the same tripartite relationship that existed between the parties in *Stewart Title* is present here and AAIC's arguments are very similar to those rejected by our Supreme Court in *Stewart Title*. Our Supreme Court gave no indication in *Stewart Title* that there could be circumstances under which the representation of an attorney retained to represent an insured would be for the benefit of the insurer. Accordingly, we are constrained to hold that *Stewart Title* controls and that AAIC was not the intended beneficiary of Matson's representation. We hold that that AAIC lacks standing to maintain its legal negligence claim against Matson and affirm the trial court's grant of summary judgment on this issue.

C.    PRINCIPLES OF LEGAL NEGLIGENCE

The trial court granted summary judgment dismissal of the Fire District's legal negligence suit against Matson based on the doctrine of judgmental immunity. The Fire District argues that the trial court erred because questions of fact exist regarding Matson's negligence. We agree with the Fire District regarding most of its negligence claims.

1. Legal Negligence Elements

To establish a claim of legal negligence, the plaintiff must prove four elements:

(1) The existence of an attorney-client relationship which gives rise to a duty of care on the part of the attorney to the client; (2) an act or omission by the attorney in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred.

*Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). "To comply with the duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law" in the state of Washington. *Hizey*, 119 Wn.2d at 261.

In the analysis of any legal negligence claim it is important to understand that an attorney is not a guarantor of success and is not responsible for a "bad result" unless the result was proximately caused by a breach of the attorney's duty of care. *See McLaughlin v. Cooke*, 112 Wn.2d 829, 839, 774 P.2d 1171 (1989) (regarding malpractice of a medical professional). Consequently, the ultimate result of a case generally is irrelevant in evaluating whether an attorney's conduct breached the duty of care.

Here, an attorney-client relationship existed between Matson and the Fire District that created a duty of care and the jury verdict damaged the Fire District. The issues in this case are whether Matson breached that duty and whether any breach was the proximate cause of the damage to the Fire District.

2. Breach of Duty – Attorney Judgment Rule

The Fire District's legal negligence claims all involve Matson's exercise of professional judgment: settlement evaluation, pre-trial case strategy decisions, and whether to object at trial. Matson argues – and the trial court agreed – that an attorney generally is immune from liability

for such judgment decisions. Although we decline to apply a rule of immunity, as discussed below we adopt an "attorney judgment rule" for determining when a judgment decision breaches an attorney's duty of care.

Other jurisdictions have recognized a "judgmental immunity" rule in various forms. 4 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 31:8, at 421-22 (2008); *see Sun Valley Potatoes, Inc. v. Rosholt, Robertson & Tucker*, 133 Idaho 1, 4 & n.1, 981 P.2d 236 (1999). This rule dictates that lawyers do not breach their duty to clients as a matter of law when they make informed, good-faith tactical decisions. *See, e.g., Woodruff v. Tomlin*, 616 F.2d 924, 930 (6th Cir. 1980); *Paul v. Smith, Gambrell & Russell*, 267 Ga. App. 107, 108-09, 599 S.E.2d 206 (2004); *Sun Valley Potatoes*, 133 Idaho at 4-5; *Clary v. Lite Machs. Corp.*, 850 N.E.2d 423, 431-32 (Ind. Ct. App. 2006); *McIntire v. Lee*, 149 N.H. 160, 168-69, 816 A.2d 993 (2003); *Rorrer v. Cooke*, 313 N.C. 338, 358, 329 S.E.2d 355 (1985). The label " 'judgmental immunity' " is something of a misnomer because it is not a true immunity rule. *Sun Valley Potatoes*, 133 Idaho at 5; *McIntire*, 149 N.H. at 169. "Rather than being a rule which grants some type of 'immunity' to attorneys, it appears to be nothing more than a recognition that if an attorney's actions could under no circumstances be held to be negligent, then a court may rule as a matter of law that there is no liability." *Sun Valley Potatoes*, 133 Idaho at 5.

Washington courts never have expressly adopted the judgmental immunity rule, but they have applied similar principles. In *Cook, Flanagan & Berst v. Clausing*, our Supreme Court addressed an error of judgment jury instruction, which stated, "An attorney is not liable for a mere error of judgment if he acts in good faith and in an honest belief that his acts and advice are well founded and in the best interest of his client." 73 Wn.2d 393, 394, 438 P.2d 865 (1968) (internal quotation marks omitted). The court did not disagree with this language, but held that

the instruction was erroneous because it did not also provide that the error of judgment "must itself fall short of negligence."[4] *Cook*, 73 Wn.2d at 394.

. The court in *Cook* did not specifically address the standard for determining when an error of judgment involves negligence. However, the court stated that the following instruction "in essence" was correct:

> [A]n attorney is not to be held liable as for malpractice because of his choosing one of two or more methods of solution of a legal problem when the choosing is the exercise of honest judgment on his part, and the method so chosen is one recognized and approved by reasonably skilled attorneys practicing in the community as a proper method in the particular case, though it might not meet with the unanimous approval of such attorneys. It is enough if the method chosen has the approval of at least a respectable minority of such attorneys who recognize it as a proper method.

*Cook*, 73 Wn.2d at 396. The court stated that the instruction was "incomplete" because it failed to incorporate the necessary standard for the performance of professional services. *Cook*, 73 Wn.2d at 396. In other words, a court must evaluate the exercise of judgment from the perspective of a reasonable, careful and prudent attorney in Washington. *See Cook*, 73 Wn.2d at 395-96.

In *Halvorsen v. Ferguson*, Division One of this court stated, "In general, mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice." 46 Wn. App. 708, 717, 735 P.2d 675 (1986) (citing *Cook*, 73 Wn.2d at 394). The court noted that "[t]his rule has found virtually universal acceptance when the error involves an uncertain, unsettled, or

---

[4] This rule has been applied similarly in other jurisdictions. *See Sun Valley Potatoes*, 133 Idaho at 5 ("An attorney is still 'bound to exercise a reasonable degree of skill and care in all his professional undertakings.' " (quoting *Woodruff*, 616 F.2d at 930)); *Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, PC*, 25 Mass. App. Ct. 107, 111, 515 N.E.2d 891 (1987) (no liability for imperfect judgment or mistake if lawyer acted " 'to the best of his skill and knowledge' ", but only if he also acted " 'with a proper degree of attention[ and] with reasonable care' " (quoting *Stevens v. Walker & Dexter*, 55 Ill. 151, 153 (1870))).

11

debatable proposition of law." *Halvorsen*, 46 Wn. App. at 717. Accordingly, the court concluded that a difference of opinion among experts regarding litigation strategy was not enough to impose liability on an attorney. *Halvorsen*, 46 Wn. App. at 718. But like the Supreme Court in *Cook*, the court also indicated that an attorney is protected from liability only if his or her exercise of judgment is free from negligence, "An attorney's immunity from judgmental liability is conditioned upon reasonable research undertaken to ascertain relevant legal principles and to make an informed judgment." *Halvorsen*, 46 Wn. App. at 718.

We read *Cook* and *Halvorsen* as establishing an "attorney judgment rule" for determining when an attorney's error in professional judgment breaches his or her duty of care. Under this rule, an attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care. Our Supreme Court's decision in *Cook* supports this rule because the court approved a jury instruction stating that an attorney cannot be held liable for malpractice if there is a difference of opinion among reasonably skilled attorneys regarding the attorney's course of action as long as the instruction incorporated the necessary standard of care. 73 Wn.2d at 396. Legal negligence commentators also support this rule: "The exercise of judgment often contemplates having to choose among other reasonable alternatives. Thus, picking the wrong alternative is not negligence." 4 MALLEN, LEGAL MALPRACTICE § 31:8, at 420 (footnote omitted).

The attorney judgment rule is consistent with a similar error in judgment rule applied in medical negligence cases. When a physician is "confronted with a choice among competing therapeutic techniques or among medical diagnoses" the physician will not be liable for an error

12

of judgment if, in arriving at that judgment, he or she exercised reasonable care and skill within the applicable standard of care. *Watson v. Hockett*, 107 Wn.2d 158, 164-65, 727 P.2d 669 (1986); *Fergen v. Sestero*, 174 Wn. App. 393, 397, 298 P.3d 782, *review granted*, 178 Wn.2d 1001 (2013).

    3.   Determining Breach of Duty on Summary Judgment

Matson argues that whether an attorney's error in judgment constitutes a breach of duty is a question of law for the court. We disagree.

The attorney judgment rule addresses whether an attorney's error in judgment has breached the duty of care to his or her client. In a negligence action, whether a defendant has breached the duty of care generally is a question of fact. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999); *Bowers v. Marzano*, 170 Wn. App. 498, 506, 290 P.3d 134 (2012). The attorney judgment rule may require the plaintiff to produce additional evidence regarding breach of duty not required when the attorney's error does not involve a judgment decision.[5] But no Washington case supports the proposition that an attorney cannot be liable for an error of judgment as a matter of law even when the plaintiff comes forward with evidence sufficient to create factual issues on breach of duty within the parameters of the attorney judgment rule. Whether an attorney has breached a duty of care remains a question for the jury.[6]

---

[5] Further, as in any attorney negligence case, a plaintiff generally must present expert testimony that the attorney breached the standard of care. *See Geer v. Tonnon*, 137 Wn. App. 838, 851, 155 P.3d 163 (2007).

[6] An exception is when an attorney is charged with an error regarding a legal question. In this situation, whether the attorney erred in interpreting or applying the law is a legal issue reserved for the court. *Halvorsen*, 46 Wn. App. at 712-13, 18 (rejecting a malpractice claim as a matter of law, for an attorney's failure to present or emphasize a certain theory of apportionment of community property in a dissolution case).

Matson is correct that under certain circumstances, whether an error in judgment constitutes a breach of duty can be decided as a matter of law. But this is no different than in any other negligence case, where a defendant can obtain summary judgment on the issue of breach of duty if reasonable minds could reach only one conclusion. *Hertog*, 138 Wn.2d at 275; *Bowers*, 170 Wn. App. at 506.

Under the attorney judgment rule a plaintiff can avoid summary judgment on breach of duty for an error in judgment in one of two ways. First, the plaintiff can show that the attorney's exercise of judgment was not within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington. Merely providing an expert opinion that the judgment decision was erroneous or that the attorney should have made a different decision is not enough; the expert must do more than simply disagree with the attorney's decision. *Halvorsen*, 46 Wn. App. at 715-16, 718 (expert statements that they would have conducted litigation differently cannot as a matter of law support a legal negligence action). The plaintiff must submit evidence that no reasonable Washington attorney would have made the same decision as the defendant attorney. *See Cook*, 73 Wn.2d at 396 (attorney not liable for a judgment decision, even though it might not meet with unanimous approval). If there is a genuine issue as to whether the attorney's decision was within the range of reasonable choices, the jury must be allowed to decide the issue.

Second, the plaintiff can show that the attorney breached the standard of care in making the judgment decision. For instance, as the court stated in *Halvorsen,* to avoid liability under the attorney judgment rule the attorney's judgment must be an informed one. 46 Wn. App. at 718. In other words, even if the decision itself was within the reasonable range of choices, an attorney

can be liable if he or she was negligent based on how that decision was made. Again, if sufficient evidence of such negligence exists, the jury must decide the issue.

4. Proximate Cause

Causation in a legal negligence claim focuses on "cause in fact", the " 'but for' " consequences of an attorney's breach of duty. *Hipple v. McFadden*, 161 Wn. App. 550, 562, 255 P.3d 730 (2011) (quoting *Geer v. Tonnon*, 137 Wn. App. 838, 844, 155 P.3d 163 (2007)). A plaintiff must prove that but for the attorney's negligence, he or she would have prevailed or obtained a better result in the underlying litigation. *Schmidt v. Coogan*, 162 Wn.2d 488, 492, 173 P.3d 273 (2007); *Smith v. Preston Gates Ellis, LLP*, 135 Wn. App. 859, 864, 147 P.3d 600 (2006). Generally, the but for aspect of proximate cause is decided by the trier of fact. *Smith*, 135 Wn. App. at 864. However, proximate cause can be determined as a matter of law if reasonable minds could not differ. *Smith*, 135 Wn. App. at 864.

When an attorney makes an error that affects the outcome of the underlying case, proximate cause can be determined in a legal negligence case by retrying (or trying for the first time) the underlying case while omitting the alleged error. *See Daugert v. Pappas*, 104 Wn.2d 254, 257-58, 704 P.2d 600 (1985). The result of the second trial is then compared to the outcome of the underlying case. *See Daugert*, 104 Wn.2d at 257-58. This is referred to as a " 'trial within a trial.' " *Kommavongsa v. Haskell*, 149 Wn.2d 288, 300, 67 P.3d 1068 (2003) (quoting *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 344 (Ind. 1991)). However, in order to avoid summary judgment and reach this stage, the plaintiff must produce evidence that the error in judgment did in fact affect the outcome.

Proximate cause may be difficult to prove for some of the judgment errors the Fire District alleges. But proximate cause issues were never before the trial court. AAIC and the Fire

District filed a summary judgment motion on the applicability of Matson's judgmental immunity affirmative defense. In its response, Matson asked for dismissal as a matter of law on judgmental immunity, and later renoted the issue for trial court consideration. Matson never generally moved for summary judgment on the Fire District's negligence claim or specifically challenged the existence of proximate cause. Accordingly, we will not address proximate cause in this appeal.

D.    MATSON'S ALLEGED JUDGMENT ERRORS

The Fire District argues that questions of fact exist as to whether Matson was negligent in providing an inadequate settlement evaluation, in mishandling pre-trial litigation matters, and in failing to object to improper closing arguments and to preserve the issue for appeal.

1.    Settlement Evaluation

Before mediation Matson provided his opinion that the settlement value of the four claims against the Fire District was approximately $370,000, which reflected a gross value of $741,000 (including attorney fees) discounted by various percentages for the different plaintiffs based on liability issues. The Fire District argues that Matson was negligent because his evaluation was inadequate and he underestimated the value of the case. The Fire District also argues that the erroneous evaluation resulted from Matson's negligence. We agree that the Fire District has presented sufficient evidence under both aspects of the attorney judgment rule to create a question of fact regarding whether Matson breached his duty of care in developing his settlement evaluation.

An attorney's opinion regarding the value of a particular case obviously involves the exercise of professional judgment. Determining case value necessarily results from a subjective assessment of a variety of case-specific liability and damages factors.

16

> The settlement process concerns the prospects of success and the value of the recovery or exposure. These considerations can be evaluated objectively but also involve subjective factors. These include the forum in which a case will be tried, the attitude of the trial judge, the likely nature of a jury and a variety of considerations that usually cannot be objectively tested, except by hindsight. For that reason, an informed judgmental decision should not be second-guessed.

4 MALLEN, LEGAL MALPRACTICE § 31:42, at 638. Accordingly, the attorney judgment rule applies, and the Fire District had the burden to come forward with evidence that Matson's settlement evaluation either (1) was not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington or (2) resulted from Matson's negligent conduct.

The Fire District submitted similar opinions from three experts – Claire Cordon, Anne Bremner and Robert Gould – that Matson's evaluation was erroneous in that he underestimated the value of the plaintiffs' claims.[7] Further, all three expressly stated that Matson's settlement evaluation breached an attorney's standard of care.

None of the experts specifically stated that the amount of Matson's evaluation was not within the range of reasonable alternatives under the facts of this case or that no reasonable attorney would have made the same settlement evaluation. In fact, none of them gave an opinion regarding what they believed was the correct settlement range. Under *Halvorsen*, the mere statements of experts that a judgment decision is erroneous or that they would have evaluated the case differently are not enough to maintain an attorney negligence claim. 46 Wn. App. at 718. However, it can be inferred that the experts believed that no reasonably prudent attorney would have agreed with Matson's evaluation based on their opinions that Matson breached the standard

---

[7] Gould's opinions on this subject were set forth in an unsigned letter that was an exhibit to his deposition and was submitted in an attachment to an attorney's declaration. Because Matson did not object to the trial court's consideration of this letter, we also consider it here. Gould did provide a short declaration, but did not address this issue in that declaration.

of care. When evaluating a summary judgment order the nonmoving party is entitled to all reasonable inferences. *Lakey*, 176 Wn.2d at 922. Accordingly, we hold that the Fire District came forward with sufficient evidence to show that Matson's settlement evaluation was not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington.

In addition, the Fire District produced sufficient evidence to create a question of fact as to whether Matson's evaluation resulted from his failure to exercise reasonable care. Cordon, Bremner, and Gould provided detailed opinions that Matson's evaluation resulted from his negligence in multiple respects: inexperience in handling discrimination cases, misunderstanding of the applicable law, failure to understand that the Fire District would be found liable, improperly assessing Collins's behavior as a mitigating factor, and failing to consult prior jury verdicts and other objective data in developing the evaluation. Using the words of the court in *Halvorsen*, these opinions create questions of fact as to whether Matson's evaluation was "conditioned upon reasonable research undertaken to ascertain relevant legal principles and to make an informed judgment." 46 Wn. App. at 718.

Accordingly, we hold that summary judgment was not proper on the issue of whether Matson's settlement evaluation constituted a breach of his duty of care.

2.   Pre-Trial Handling

The Fire District argues that Matson was negligent in the handling of the case before trial in multiple respects. In its appellate briefing, the Fire District references the following alleged deficiencies: (1) adopting a strategy that assumed the jury would view James's conduct as light-hearted banter and blamed Collins for James's conduct; (2) failing to provide a settlement evaluation earlier in the case; (3) failing to pursue early settlement/mediation; (4) failing to make

individual settlement offers to the different plaintiffs; (5) failing to consult with other attorneys in his firm who were more experienced, (6) failing to arrange for a mock trial or consult with a jury consultant; (7) failing to file a motion to bifurcate; (8) failing to file dispositive motions, particularly on Collins's claim; and (9) failing to file an offer of judgment.[8] We hold that the Fire District has presented sufficient evidence under the attorney judgment rule to create questions of fact regarding Matson's negligence in the pre-trial handling of the case.

All of Matson's alleged deficiencies listed above related to pre-trial tactics and strategy and involved the exercise of professional judgment. Accordingly, the attorney judgment rule applies, and the Fire District had the burden to come forward with evidence that Matson's judgment decisions either (1) were not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington or (2) resulted from Matson's failure to exercise reasonable care.

As with the settlement evaluation issue, the Fire District did not provide any expert testimony that no reasonable attorney would have handled the case like Matson did in these specific respects. The experts only generally asserted that Matson's pre-trial strategy decisions were negligent or breached the duty of care. The expert opinions on these issues are closer to merely stating that Matson should have made different decisions or that the experts would have made different decisions. Nevertheless, resolving all inferences in the Fire District's favor, we hold that the evidence is sufficient to create a question of fact regarding whether Matson's judgment decisions were not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington.

---

[8] The Fire District's experts may have referenced other alleged deficiencies. However, because they were not argued or mentioned in the Fire District's appellate briefing we need not consider them.

19

In addition, the Fire District's experts stated opinions that Matson's alleged judgment errors resulted from his negligence – primarily, inexperience in handling discrimination cases and misunderstanding the applicable law. These opinions are sufficient to create questions of fact regarding whether Matson exercised *informed* judgment regarding pre-trial strategic decisions.

Accordingly, we hold that summary judgment was not proper on the issue of whether Matson's pre-trial judgment decisions constituted a breach of his duty of care.

3. Plaintiffs' Improper Closing Argument

During closing argument in the *Collins* case, plaintiffs' counsel made the following statements:

> The amount that's being sought will not in any way reduce fire services, hurt the department. It's not going to do anything that will hurt services in any way, or raise taxes, do any of the bogeys that might be mentioned. It will not happen. We know that.
> What you need to do, please, is put a value on their suffering that other departments will look up and say, "We can't do that." Put a value on what they have experienced and compensate them to a level that says, "If you do this, serious consequences flow, and we compensate people as they are injured." And in so doing, help let the commissioners know the answer to the question they felt had to go to you all to be decided. And in so doing, also let . . . [human resources] departments know that there's a better structure, there's a better way to do this.

*Collins*, 155 Wn. App. at 72-73 (emphasis omitted) (alteration in original). Matson did not object to this argument. *Collins*, 155 Wn. App. at 73. The Fire District alleges that the argument was improper[9] and that Matson was negligent in failing to object, failing to file a motion in

---

[9] The Fire District provides no explanation in this case as to why the argument was improper. On appeal in the underlying case, the Fire District argued that the statement amounted to a reference to insurance and urged the jury to send a message with its verdict. *Collins*, 155 Wn. App. at 95-97.

20

limine regarding improper closing arguments, and failing to object after the fact to preserve the issue for appeal.

We hold that the Fire District did not present sufficient evidence under either part of the attorney judgment rule to create questions of fact regarding Matson's breach of duty in failing to object and in failing to file an appropriate motion in limine. We hold that the Fire District presented sufficient evidence under the attorney judgment rule to create a question of fact regarding Matson's breach of duty in failing to preserve the closing argument issue for appellate review.

### a. Failure To Object During Closing Argument

Whether to object to an improper statement in closing argument involves the exercise of the attorney's judgment. "The decision of when or whether to object is a classic example of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). Accordingly, the attorney judgment rule applies and the Fire District had the burden to come forward with evidence that Matson's failure to object either (1) was not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington or (2) resulted from Matson's failure to exercise reasonable care. We note that "allegations of negligence pertaining to trial tactics and procedure[ are] matters frequently difficult to prove." *Walker v. Bangs*, 92 Wn.2d 854, 858, 601 P.2d 1279 (1979).

Although plaintiffs' counsel's comments may have been improper, they were fairly vague. Counsel did not expressly mention "insurance" or explicitly ask the jury to punish the defendants. *Collins*, 155 Wn. App. at 72-73. Matson explained that although he interpreted plaintiffs' closing as possibly objectionable in two respects, he did not object and did not want a curative instruction because he did not want to spotlight the issues in front of the jury. Counsel

21

legitimately may decide not to object to avoid the risk of emphasizing an objectionable statement. *See In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

Gould opined that Matson should have objected during closing argument and that in his opinion Matson's silence was "stupid, if not negligent." CP at 849. But Gould did not expressly state that Matson's failure to object during closing argument breached the standard of care. Moreover, even Gould acknowledged Matson's concern about objecting in the presence of the jury. And Bremner noted that Matson had "a difficult choice" about whether to object when opposing counsel made an improper argument. CP at 808. Neither expert stated that no reasonable attorney would have decided not to object during closing argument under these circumstances. Further, the Fire District does not argue, and its experts do not state, that the decision to not object itself resulted from Matson's negligence. Accordingly, we hold that the Fire District failed to raise a question of fact under either part of the attorney judgment rule that Matson's failure to object during closing argument constituted a breach of duty. Summary judgment was appropriate on this issue.

### b. Failure To File Motion in Limine

The Fire District argues that although Matson may have been faced with a difficult decision as to whether or not to object during closing argument, he never would have been in that position if he had filed a motion in limine barring the plaintiffs' counsel from making improper arguments (or raised the issue right before closing argument). The Fire District argues that Matson was negligent in failing to file such a motion in limine. Because the decision whether to file a motion in limine involved the exercise of Matson's judgment, the attorney judgment rule applies.

Bremner was the only expert that opined about a motion in limine. Although Bremner did not render an opinion that no reasonable attorney would have failed to file the motion, she stated that the failure to file a motion in limine violated the standard of care. However, the trial court actually granted motions in limine excluding from the jury's consideration insurance, lack of insurance, or any direct or implied argument of any adverse financial effect of a judgment. Because Bremner's opinion was based on an incorrect assumption not supported by the record – that there was no order in limine that addressed the subject of the improper closing argument – it cannot create a question of fact on Matson's breach of duty.

c.    Failure To Preserve Issue for Appeal

The Fire District argues that even if Matson did not want to object in front of the jury, he should have preserved the issue for review by objecting later or moving for a mistrial outside the presence of the jury. Gould stated that Matson breached the standard of care in failing to preserve obvious error for appellate review. He indicated that any reasonable attorney would have objected and requested a curative instruction. Gould also presented an opinion tailored to the attorney judgment rule, stating that "no reasonable Washington attorney would have done *nothing* to protect the client from the improper . . . closing arguments." CP at 1080 (emphasis in original). We hold that this opinion is sufficient to create a question of fact under the attorney judgment rule that Matson's failure to do more to preserve the issue for appeal was not within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington.[10]

---

[10] On remand the Fire District will have to show that Matson's failure to properly preserve the closing argument issue for appeal proximately caused harm. However, as noted above we do not address proximate cause because it was not addressed below.

23

We affirm the trial court's grant of summary judgment on Matson's failure to object to the improper closing argument and failure to file a motion in limine addressing the subject of the improper argument, but reverse on Matson's alleged failure to preserve the closing argument issue for appeal.

In conclusion, we affirm the trial court's grant of summary judgment in favor of Matson on AAIC's claims, but reverse the grant of summary judgment on all the Fire District's claims except for the failure to object to the improper closing argument and the failure to file an appropriate motion in limine on the subject of the closing argument. We remand for further proceedings consistent with this position.

MAXA, J.

We concur:

LEE, J.

PENOYAR, J.P.T.