IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER NORBERG,<br><br>Appellant,<br><br>v.<br><br>LORI J. GUEVARA, individually,<br><br>Respondent. | No. 86435-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — Lori Guevara represented Christopher Norberg in his divorce from Beth Elaine Boel. Afterwards, Norberg sued Guevara for legal malpractice, alleging she negligently failed to seek a ruling from the trial court that a document the couple executed during their marriage constituted a "standard" community property agreement (CPA). Such an agreement would have immediately converted all their separate property into community property, resulting—Norberg claims—in a more favorable distribution of assets for him. Guevara successfully moved for summary judgment, and Norberg now claims the trial court erred in granting it and dismissing his claims with prejudice. We affirm because Norberg did not establish that there is a genuine issue of material fact that Guevara breached the duty of care, which was necessary for him to survive summary judgment. However, we deny Guevara's request for attorney fees on appeal.

## I.   BACKGROUND

A.     Underlying Dissolution Proceeding

Before marrying Norberg in 1995, Boel had been married to a Belgian man who died in 1988.  Following his death, she received a life estate interest in Belgian "usufruct" rights, which her deceased husband had held as a shareholder of chemical and investment companies.  The interest granted her annual distributions of approximately $385,000 until her death.

In 2003, Norberg and Boel signed a document entitled "Community Property Agreement" ("2003 agreement").  In the first paragraph, the 2003 agreement provides that the parties entered into it pursuant to RCW 26.16.120.  The agreement characterizes the statute as governing "agreements between husband and wife for the fixing of the status and disposition of community property to take effect upon the death of either."  The 2003 agreement further specifies that it "is executed for estate planning purposes only, and not for any other use."

Norberg and Boel subsequently purchased real estate with funds from Boel's "usufruct" earnings.  In 2008, they purchased a home on Bainbridge Island and, in 2013, they purchased a 50% interest in a second home in Sedona, Arizona, for $750,000.

In 2019, Norberg filed for divorce and, in 2021, he retained Guevara to represent him at trial.  Guevara asked the court to equitably divide Norberg and Boel's marital estate and, while she had the 2003 agreement admitted as an exhibit, she did not seek a ruling that it was a "standard" CPA or otherwise ask the court to rely on it or use it in its distribution of property.

In September 2021, the court divided the property, finding in pertinent part

2

that the Belgian "usufruct assets" were Boel's "separate property." It also awarded the home on Bainbridge Island to Boel, finding she acquired the property using her Belgian income and that Norberg "did not dispute the separate property character of this asset." To Norberg, the court awarded a 50% share of Norberg and Boel's interest in the net proceeds of the sale of the Arizona home.

B.     Present Action and Motion for Summary Judgment

In June 2023, Norberg sued Guevara for legal malpractice and negligence, seeking $1.5 million in damages because she failed to seek a ruling at his dissolution trial that the 2003 agreement converted all separate property immediately to community property, as a "standard" CPA would.

In September 2023, the court denied Norberg's "motion for declaratory judgment," which asked the court to find the 2003 agreement was a "standard Washington state 'three-prong' community property agreement that vests upon execution by the parties." The court ultimately ruled it was simply an "estate planning document."

Guevara subsequently moved for summary judgment. In support, she submitted a sworn declaration in which she explained why she did not ask the court to interpret the 2003 agreement in the way Norberg now understands the document. Namely, she asserted that—as reflected in notes she took contemporaneously—Norberg told her that he and Boel entered into the 2003 agreement for estate planning purposes in advance of the birth of their son. Guevara also claimed that he told her that he understood that the 2003 agreement was effective only when he or Boel died. Guevara also stated that, based on her

3

own legal research, she could not successfully make the argument that the document converted all property at the time it was executed. And she decided she could not ethically so argue.

In support of her motion, Guevara also submitted a declaration from Norberg's prior attorney. That attorney asserted he had withdrawn a summary judgment motion arguing that the entire marital estate was community property, after viewing Boel's response. Guevara stated Norberg told her his counsel withdrew the motion because he thought it "was not winnable." The former attorney also "determined he could not ethically defend [Norberg's] arguments" concerning the 2003 agreement.

In response to Guevara's motion for summary judgment, Norberg did not contest that he made those prior statements about the 2003 agreement to Guevara, or the contemporaneous reasons behind his counsel's tactics.[1] Instead, Norberg attached to a declaration from the attorney litigating the malpractice suit two sets of discovery responses. In the first—a supplemental answer to an interrogatory—Norberg disclosed an expert witness, Duncan Connelly, who was "expected to testify on the standard of care relevant to legal malpractice claims," and who

> [would] testify . . . regarding Ms. Guevara's actions as a breach of the standard of care, and what actions Ms. Guev[a]ra could or should have taken to avoid breaching her duties to Mr. Norberg, potentially including efforts to seek summary judgment on the interpretation of

---

[1] In support of his motion for declaratory judgment, Norberg's submitted a declaration, stating only that, "[p]rior to trial, [he] told Ms. Guevara about the community property agreement[—][s]he dismissed it," and "[he] tried to highlight facts she was overlooking, like the community property agreement, but she was nonresponsive."

4

the Community Property Agreement. Mr. Connelly will testify that Ms. Guevara's conduct in the underlying case breached the relevant standard of care and that her actions fell below the standard of care and diligence expected of an attorney in Washington.

In the second discovery response—an amended witness disclosure—Norberg stated that Connelly would "offer testimony [that] Ms. Guev[a]ra should have . . . argue[d] the Community Property Agreement at the core of this case or [have] s[ought] summary judgment on the interpretation of that agreement."

Neither response contains a sworn declaration from Connelly, and neither one otherwise addresses the alleged breach of the duty of care.

After hearing argument from both parties in February 2024, the court granted Guevara's summary judgment motion and dismissed Norberg's claims with prejudice. Among its conclusions, it held that, while Norberg's attorney had argued during the hearing that "Guev[a]ra's declaration contained false statements/misrepresentations," he "submitted no sworn declarations or admissible evidence from [Norberg] or any other individual controverting [Guevara]'s assertions." Norberg timely appeals.

## II.    ANALYSIS

### A.    Summary Judgment on Norberg's Legal Malpractice Claim

#### 1. Law

##### a.    Summary Judgment Standards

Summary judgment is appropriate where the materials and evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

We review summary judgment orders de novo, and in assessing summary judgment awards, we employ a two-step burden-shifting analysis. TracFone, Inc. v. City of Renton, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (2024). First, the party moving for summary judgment bears a burden to show that there is no genuine issue of material fact, which is one upon which the outcome of the litigation depends. Walston v. Boeing Co., 181 Wn.2d 391, 395-96, 334 P.3d 519 (2014); Jacobsen v. State, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977). Then, the onus to present evidence shifts to the party opposing summary judgment, who must present evidence showing that a genuine issue of material fact remains. Walston, 181 Wn.2d at 396.

When, as here, the party moving for judgment is a defendant, it may meet its initial summary judgment burden by pointing out there is an absence of evidence to support the nonmoving party's case. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

Then, to defend against judgment, the opposing party must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues. Ruffer v. St. Frances Cabrini Hosp. of Seattle, 56 Wn. App. 625, 628, 784 P.2d 1288 (1990). It also cannot rely on inadmissible hearsay in response, Dunlap v. Wayne, 105 Wn.2d 529, 535-36, 716 P.2d 842 (1986), as a court ruling on a summary judgment motion cannot consider it. ER 801(c); CR 56(e).[2] For example, an attorney's affidavit

---

[2] "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and it is inadmissible if it does not fit within an exception. ER 801(c); ER 802.

which merely relates assertions made by a client constitutes hearsay and does not set forth facts which would be admissible in evidence, as required to survive summary judgment. Welling v. Mount Si Bowl, Inc., 79 Wn.2d 485, 489, 487 P.2d 620 (1971).

To succeed in defeating summary judgment, a nonmoving party generally must adduce affidavits as evidence from affiants who are competent to testify that set forth facts based upon personal knowledge. CR 56(e); Hill v. Sacred Heart Med. Ctr., 143 Wn. App. 438, 449, 177 P.3d 1152 (2008). The nonmoving party may also rely on affidavits that reference other sworn statements in the record based on personal knowledge. Hill, 143 Wn. App. at 449. However, we have held "documents are not rendered admissible as evidence solely because the moving party filed them with a motion for summary judgment." In re Estate of Ferara, 29 Wn. App. 2d 139, 156, 540 P.3d 194 (2023).

If the nonmoving party does not present admissible evidence demonstrating a genuine issue of material fact, it has not met its burden, and summary judgment for the movant is appropriate. Pac. Nw. Shooting Park Ass'n v. City of Sequim, 158 Wn.2d 342, 351, 144 P.3d 276 (2006).

We may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record on appeal. Performance Constr., LLC v. Glenn, 195 Wn. App. 406, 415, 380 P.3d 618 (2016).

b.     Elements of a Legal Malpractice Claim

To establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) an act or omission by the attorney

in breach of the duty of care; (3) damage to the client; and (4) proximate causation between the attorney's breach of the duty and the damage incurred. Hizey v. Carpenter, 119 Wn.2d 251, 260–61, 830 P.2d 646 (1992).[3]

As to the second element, a breach of a duty in a legal malpractice claim is the failure to exercise "the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law" in the applicable jurisdiction. Id. at 261. Expert testimony is "often required to determine whether an attorney's duty of care was breached." Geer v. Tonnon, 137 Wn. App. 838, 851, 155 P.3d 163 (2007). As our Supreme Court has explained, "[b]y its very nature, an action for professional negligence in the preparation and conduct of specific litigation involves matters calling for special skill or knowledge [which are] proper subjects for expert testimony." Walker v. Bangs, 92 Wn.2d 854, 857-58, 601 P.2d 1279 (1979). Therefore, other than in malpractice cases where the nature of the charged negligence is "within the common knowledge of lay persons," id., plaintiffs are "ordinarily required to present expert testimony setting forth an industry specific standard of care." Singh v. Zurich Am. Ins. Co., 5 Wn. App. 2d 739, 757, 428 P.3d 1237 (2018).

What's more, in assessing claims an attorney breached their duty of care, this court has applied the "attorney judgment rule." Clark County Fire Dist. No. 5

---

[3] Aside from proof of an attorney-client relationship, the elements of negligence and legal malpractice are the same. See Sherry v. Diercks, 29 Wn. App. 433, 437, 628 P.2d 1336 (1981). The trial court found Norberg's negligence claim was duplicative of his legal malpractice claim. And Norberg did not assign error to this holding, which obviates our need to consider that cause of action further. RAP 2.4(a); RAP 10.3(a)(4); RAP 10.3(g); Unigard Ins. Co. v. Mut. of Enumclaw Ins. Co., 160 Wn. App. 912, 922, 250 P.3d 121 (2011).

v. Bullivant Houser Bailey P.C., 180 Wn. App. 689, 704, 324 P.3d 743 (2014). Under that rule:

> [A]n attorney cannot be liable for making an allegedly erroneous decision involving honest, good faith judgment if (1) that decision was within the range of reasonable alternatives from the perspective of a reasonable, careful and prudent attorney in Washington; and (2) in making that judgment decision the attorney exercised reasonable care.

Id.

In Clark County Fire Dist., we surveyed examples of cases where a plaintiff made an *insufficient* showing that an attorney's decision was not within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington. Id. at 701-06. We specifically held that "[m]erely providing an expert opinion that the judgment decision was erroneous or that the attorney should have made a different decision is not enough" evidence to establish breach in order to avoid summary judgment dismissal of a legal negligence claim. Id. at 706. Ultimately, "whether a defendant has breached the duty of care generally is a question of fact . . . for the jury," but "this is no different than in any other negligence case, where a defendant can obtain summary judgment on the issue of breach of duty if reasonable minds could reach only one conclusion." Id. at 705 (citation omitted).

2. Discussion

To meet her initial burden of production, Guevara provided evidence that she made the decision not to seek a ruling on the 2003 agreement based upon (a) what Norberg told her the intent and effective date of the document was, (b) learning of a previous, unsuccessful attempt to make such an argument, and (c)

her own legal review[4] and assessment of her ethical duties. Thus, she met her initial burden to show the absence of a genuine issue of material fact that she breached her duty of care. Young, 112 Wn.2d at 225. The burden then shifted to Norberg. Walston, 181 Wn.2d at 395-96.

In response, Norberg did not present evidence showing that a genuine issue of material fact remains as to breach because, first, the declaration he submitted from his counsel did not "set forth such facts as would be *admissible* in evidence." CR 56(e) (emphasis added); Dunlap, 105 Wn.2d at 535-36. His counsel's declaration and the two attached discovery responses—mere summaries of expected expert testimony—were inadmissible hearsay statements, not sworn affidavits based on personal knowledge of the putative proper affiant, i.e., Connelly. CR 56(e); ER 801(c); Hill, 143 Wn. App. at 449. Discovery responses are not rendered admissible evidence simply because they are attached to an attorney's declaration or submitted in summary judgment proceedings. Welling, 79 Wn.2d at 489; Ferara, 29 Wn. App. 2d at 156. While a court "may permit" affidavits filed in support of a summary judgment motion to be "*supplemented*" by answers to interrogatories or other discovery, the underlying affidavit must be admissible. CR 56(e) (emphasis added). As a result, because Norberg did not

---

[4] It is true that "whether the attorney erred in interpreting or applying the law is a legal issue reserved for the court." Clark County Fire Dist., 180 Wn. App. at 705 n.6. But we need not reach whether the 2003 agreement was in fact a "standard" CPA. For purposes of this opinion, we may assume it was and still require that Norberg show Guevara's "error in judgment" (in not making the argument) "was not within the range of reasonable choices from the perspective of a reasonable, careful and prudent attorney in Washington" or "even if the decision itself was within the reasonable range of choices, . . . she was negligent based on how that decision was made." Id. at 706.

respond with evidence meeting his burden of production as the nonmoving party, it was appropriate to enter summary judgment against him. CR 56(e); Pac. Nw. Shooting Park Ass'n, 158 Wn.2d at 351.

Second, and more substantively, an affidavit itself "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e); Ferara, 29 Wn. App. 2d at 156. And Norberg's summaries of anticipated expert testimony did not create a question of fact that Guevara breached her duty. Even viewing the summaries of the expert's expected testimony in the light most favorable to Norberg, the summaries of the expected testimony do not contain any claim in more than conclusory language that Guevara breached the standard of care. Again, the opposing party must respond with more than conclusory allegations or argumentative assertions of the existence of unresolved factual issues. Ruffer, 56 Wn. App. at 628. The summaries of Connelly's expected testimony are nothing more than that and, thus, based on the record before us, "reasonable minds could reach only one conclusion": Guevara shifted the burden on breach of duty to Norberg, who did not respond with admissible and "specific facts showing that there is a genuine issue for trial." Clark County Fire Dist., 180 Wn. App. at 705; CR 56(e).

Therefore, we affirm the dismissal of his malpractice and negligence claims. Glenn, 195 Wn. App. at 415.

B.     Fees

Guevara seeks her fees on appeal because Norberg's appeal is frivolous. RAP 18.9 permits an appellate court to award a party attorney fees as

11

sanctions when the opposing party files a frivolous appellate action. Reid v. Dalton, 124 Wn. App. 113, 128, 100 P.3d 349 (2004). In determining whether an appeal is frivolous, all doubts on the question must be resolved in favor of the appellant, and an appeal that is simply affirmed because we reject its arguments is not frivolous. Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005). An appeal is only frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and the appeal is so devoid of merit that there is no possibility of reversal. Id.

Although we affirm, we disagree that Norberg's appeal constitutes "precisely the abuse of the appellate process that RAP 18.9 is intended to deter." The parties' briefing largely revolves around whether the 2003 agreement is a standard CPA, which is an issue that we do not deem to be so devoid of merit that his appeal stood no possibility of success. Thus, while we resolve the matter on alternate grounds, it is not frivolous. Tiffany, 155 Wn.2d at 241. RAP 18.9 does not entitle Guevara to fees as sanctions.

## III.    CONCLUSION

We affirm the trial court's summary judgment dismissal of Norberg's lawsuit and deny Guevara's request for fees.

_Díaz, J._

WE CONCUR:

_Feldman, J._

_Birk, J._