# FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 03 2013

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Oct 3, 2013

Ronald R. Carpenter
Supreme Court Clerk




# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STEWART TITLE GUARANTY COMPANY, a Texas corporation, | |
| Appellant, | |
| v. | NO. 87087-0 |
| STERLING SAVINGS BANK, a Washington corporation; STERLING FINANCIAL CORPORATION, a Washington corporation, | |
| Defendants, | EN BANC |
| WITHERSPOON, KELLEY, DAVENPORT & TOOLE, PS, a Washington corporation; DUANE M. SWINTON and JANE DOE SWINTON, and the marital community composed thereof, | Filed OCT 03 2013 |
| Respondents. | |

GORDON McCLOUD, J.—A title insurer, Stewart Title Guaranty Company, hired the law firm Witherspoon, Kelley, Davenport & Toole PS (collectively Witherspoon) to defend its insured, Sterling Savings Bank, from a

claim of lien priority on real property by a construction company (Mountain West). The claim was resolved in favor of Mountain West, and Stewart Title then sued Witherspoon for malpractice. Stewart Title claimed the law firm had improperly failed to raise the viable defense of equitable subrogation. Witherspoon defended by arguing that there was no duty and no breach, specifically, (1) that Witherspoon's client was Sterling, not Stewart Title, and hence Witherspoon owed no duty to Stewart Title that would support that nonclient third party payor's claim of malpractice; and (2) that equitable subrogation would not have been a viable argument anyway.

Witherspoon moved for summary judgment on both grounds: (1) that it owed a duty only to the client, Sterling, rather than to the payor, Stewart Title; and (2) that an equitable subrogation argument would have failed. The trial court ruled against Witherspoon on the first, no-duty, ground but agreed with it on the second, no-breach, ground. The court therefore granted summary judgment in favor of Witherspoon. We accepted review of both the duty issue and the equitable subrogation issue. We affirm the trial court's grant of summary judgment dismissing Stewart Title's malpractice case against Witherspoon on the basis that Witherspoon owed no duty to Stewart Title. We do not reach the equitable subrogation issue.

FACTS

Because we resolve this case on the basis that Witherspoon owed no duty to Stewart Title that would permit Stewart Title to maintain a malpractice action against Witherspoon, we do not reach the parties' equitable subrogation arguments. Consequently, we recite the facts relevant to the issue of Witherspoon's duty to Stewart Title.

A lender—Sterling—agreed to lend money to a borrower to purchase property to develop. As a condition of the loan, Sterling required a first priority security interest in the property. The lender's title insurance company—Stewart Title—negligently failed to inspect the property before the loan went through; as a result, Stewart Title failed to discover that the builder—Mountain West—had already started construction on the property. By statute, Mountain West gained an interest in the form of a mechanics' lien as of the date construction began.

After a payment dispute arose, Mountain West discovered that its mechanics' lien held first position. The lender, Sterling, asked its title insurance company, Stewart Title, to defend it in the ensuing foreclosure action, because the insurer's policy covered mechanics' liens. Stewart Title admitted its duty to defend Sterling and hired Sterling's long time law firm—Witherspoon—to do so.

In that underlying lawsuit, Witherspoon stipulated that Mountain West had first priority and sought a swift settlement with the construction company. At some point after the stipulation, Stewart Title fired Witherspoon over disagreements related to whether equitable subrogation was a viable defense for Sterling. Stewart Title hired new counsel, who tried to argue that Sterling was equitably subrogated to the prior interests it paid off and therefore had priority after all. The trial court held the parties were bound by the earlier stipulation and disallowed the equitable subrogation defense.

Stewart Title then sued the law firm, Witherspoon, for malpractice based on Witherspoon's failure to raise the equitable subrogation defense for the lender, Sterling, before stipulating the construction company had priority. As discussed above, Witherspoon argued that (1) its client was the insured lender, not the title insurer, and it therefore owed no duty to the title insurer that would permit the insurer to sue the firm for malpractice; and, alternatively, that (2) an equitable subrogation argument would have failed under the facts of the case. As also discussed above, the trial court rejected Witherspoon's argument that it had no duty and denied Witherspoon's motion for summary judgment based on lack of a duty to Stewart Title. But the trial court agreed with Witherspoon that equitable subrogation would not have been a viable argument at the time of the underlying

trial and granted summary judgment to Witherspoon on that basis. We accepted review and now affirm the grant of summary judgment in favor of Witherspoon, albeit on a different basis than that adopted by the trial court.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's order granting summary judgment de novo. *Mohr v. Grantham*, 172 Wn.2d 844, 859, 262 P.3d 490 (2011) (citing *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 266, 189 P.3d 753 (2008)). We view all the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

### II. ATTORNEYS' DUTIES TO NONCLIENTS

Witherspoon's only client was Sterling. Stewart Title was a nonclient third party payor. In *Trask v. Butler*, 123 Wn.2d 835, 872 P.2d 1080 (1994), this court expressly adopted a multifactor test to determine whether an attorney may be liable for malpractice to such a nonclient third party. The relevant factors are:

1. The extent to which the transaction was intended to benefit the plaintiff [that is, the third party suing the attorney];

2. The foreseeability of harm to the plaintiff;

3.    The degree of certainty that the plaintiff suffered injury;

4.    The closeness of the connection between the defendant's [that is, the attorney's] conduct and the injury;

5.    The policy of preventing future harm; and

6.    The extent to which the profession would be unduly burdened by a finding of liability.

*Trask*, 123 Wn.2d at 843.  We explained that the first factor is the "primary inquiry" in determining an attorney's liability to third parties.  *Id.* at 842.  We further explained that "under the modified multi-factor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained" and that "no further inquiry need be made unless such an intent exists." *Id.* at 843.

We have addressed the *Trask* factors only once, holding under very different facts that an insurance claim adjuster had a duty to the unrepresented claimants she had helped.  *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 307-08, 45 P.3d 1068 (2002).  The issue presented here, in contrast, is whether an attorney hired by a title insurer to represent its insured owed a duty to the nonclient insurer and, hence, whether that insurer can sue the lawyer for negligently representing the insured during the defense.  This is an issue of first impression in Washington.

Here, the trial court found that Witherspoon owed a duty to Stewart Title

under *Trask*. It held that under the first *Trask* factor,[1] Stewart Title was an intended beneficiary of Witherspoon's representation of Stewart Title's insured. We disagree.

The trial court based its determination that Stewart Title was an intended beneficiary under *Trask* on two legal conclusions. First, it found that the interests of Stewart Title and Witherspoon were aligned during the representation. Second, it found a contractual basis for a duty running from Witherspoon to Stewart Title. We disagree with both conclusions.

> i. *Alignment of Interests Is Insufficient To Establish that Witherspoon Owed a Duty to Stewart Title*

The alignment of interests is insufficient to find a duty running from Witherspoon to Stewart Title for purposes of a malpractice claim. Stewart Title argues, in support of the trial court's decision, that as long as there is no actual conflict of interest between an insurer and its insured, a nonclient insurer is *presumed* to be an intended beneficiary and "can bring a claim for malpractice" against its insured's attorney. Suppl. Br. of Appellant at 3; *see also id.* at 20. Under Stewart Title's analysis, unless there is an actual and demonstrable conflict

---

[1] The first and most important factor is "the extent to which the transaction was intended to benefit [the nonclient suing the attorney]." *Trask*, 123 Wn.2d at 843.

of interest, an insurer may always sue its insured's attorney for malpractice under *Trask*.

We reject that analysis. The *Trask* standard requires a showing that the "transaction was *intended* to benefit" a third party to some extent before we will permit that third party to sue for malpractice. *Trask*, 123 Wn.2d at 843 (emphasis added). The fact that an insurer's and insured's interests happen to align in some respects—though perhaps not in all respects, as shown by contrasting Witherspoon's strategy of seeking a speedy, yet just, settlement with Stewart Title's different strategy—does not by itself show that the attorney or client *intended* the insurer to benefit from the attorney's representation of the insured.[2]

Indeed, a contrary conclusion would conflict with *Trask*. It could also make any third party payor an intended beneficiary of a legal services contract to whom

---

[2] We recognize that other jurisdictions have come to a different conclusion. *See Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 155, 24 P.3d 593 (Ariz. 2001) (holding that a "lawyer's services are ordinarily intended to benefit both insurer and insured when their interests coincide"); *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 523, 475 N.W.2d 294 (1991) (permitting insurer to bring malpractice action where "the interests of the insurer and the insured generally merge"); *Unigard Ins. Group v. O'Flaherty & Belgum*, 38 Cal. App. 4th 1229, 1236-37, 45 Cal. Rptr. 2d 565 (1995) (permitting malpractice action "where there is otherwise no actual or apparent conflict of interest between the insurer and the insured" (emphasis omitted)); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 51 cmt. g (2000) (stating, regarding a test with an intended beneficiary factor similar to Washington's, that "a lawyer designated by an insurer to defend an insured owes a duty of care to the insurer with respect to matters as to which the interests of the insurer and insured are not in conflict").

a duty of care runs, in violation of RPC 5.4(c).[3] We cannot endorse an analysis that would violate both of these settled rules of law.

>    ii.    *Witherspoon's Duty To Inform Stewart Title Is Insufficient To Establish that Witherspoon Also Owes a Duty of Care to Stewart Title that Supports a Malpractice Claim by Stewart Title*

The trial court also held that Stewart Title was an intended beneficiary of Witherspoon's representation of Sterling because of Stewart Title's retention letter. It found that the retention letter created a contractual duty on the part of Witherspoon to keep Stewart Title informed about the progress of the lien priority litigation. We conclude that Witherspoon's duty to inform Stewart Title is insufficient to establish a further duty of care permitting Stewart Title to bring a malpractice claim based on an alleged breach of a different duty to a different entity—that is, Witherspoon's duty of care to its client, Sterling.

Based on the agreement of the parties and the terms of the retention letter sent to Witherspoon by Stewart Title, the trial court found a duty on the part of Witherspoon to inform Stewart Title. Moreover, it found that the "duty that Witherspoon could have to Stewart Title, a nonclient, comes from the duty to inform." Clerk's Papers (CP) at 523-24.

---

[3] RPC 5.4(c) states, "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."

The trial court erred in finding in this case that a duty to inform could lead to a duty of care to an entity other than the client for malpractice purposes. An attorney hired to represent a client by a third party payor may generally, as part of the terms of the retention, have a duty to keep the payor informed (within the bounds of the attorney-client privilege and the duty of confidentiality). But such a limited duty to inform the nonclient third party payor does not give rise to a broad duty of care that would support a malpractice claim by the third party payor. It does not create that separate duty of care for the same reasons that the client's and nonclient payor's alignment of interests does not create such a separate duty: first, because acceptance of a duty to inform a nonclient third party payor does not show that the attorney's representation was *intended* to benefit the third party payor, as *Trask* requires; and second, because an attorney cannot contract away his or her professional duty to "not permit a person who . . . pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." RPC 5.4(c).

The trial court concluded that Stewart Title was an intended beneficiary of Witherspoon's representation of Sterling and thus that Witherspoon owed a duty of careful representation to Stewart Title, based in part on finding a contractual duty on the part of Witherspoon to inform Stewart Title and in part on the alignment of

interests between Witherspoon and Stewart Title. We hold that an alignment of interests is insufficient to support a duty of care to a nonclient. We further hold that a contractual duty to inform is insufficient to support a duty of care to a nonclient. Putting both of them together does not cure the insufficiency. Therefore, the trial court erred in finding that the first *Trask* factor was satisfied and should have granted Witherspoon's motion for summary judgment based on lack of a duty to Stewart Title.

The trial court did, however, grant summary judgment to Witherspoon on the basis that equitable subrogation could not have succeeded as a defense in the lien priority lawsuit upon which Stewart Title's malpractice action was based. We therefore affirm the trial court's grant of summary judgment to Witherspoon, albeit on different grounds.[4]

## CONCLUSION

---

[4] We take no position on whether the trial court's analysis of the parties' equitable subrogation claims was correct. We note, however, that the equitable subrogation issue in this case is very limited and fact-specific. The malpractice claim is based on professional decisions made in 2008, not today, and the viability of the malpractice claim therefore depended on not just whether the lawyers' decisions were incorrect but whether those decisions demonstrated a failure, at the time they were made, to "exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in this jurisdiction." *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992) (citing *Hansen v. Wightman*, 14 Wn. App. 78, 90, 538 P.2d 1238 (1975)).

The trial court erred when it found a duty running from Witherspoon to Stewart Title for purposes of a malpractice claim by Stewart Title. Our case law establishes that a nonclient may not pursue a claim of malpractice against another's attorney unless the nonclient shows, as a threshold matter, that the attorney's representation was to some extent intended to benefit the nonclient. Stewart Title has not shown that it was an intended beneficiary of Witherspoon's services to Sterling. Thus Stewart Title cannot pursue a malpractice claim against Witherspoon based on Witherspoon's services to Sterling. The trial court granted summary judgment in favor of Witherspoon on a different basis. We therefore affirm that order, but on different grounds.

_Gordon McCloud, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Fairhurst, J._

_J.M. Johnson, J._

_Stephens, J._

_Wiggins, J. – result only_

_González, J._